## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SANDRA COUCH,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>ELI LILLY AND COMPANY, an<br>Indiana corporation,<br><br>　　　　　Defendant. | Case No.: 1:14-cv-02564-MHC |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO TRANSFER PROCEEDINGS TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA PURSUANT TO 28 U.S.C. § 1404(a)

Making literally the same arguments and offering the same dire forecasts of plaintiffs-in-waiting, Plaintiff's counsel asked the Judicial Panel on Multidistrict Litigation to centralize this and other similar lawsuits for pre-trial purposes pursuant to 28 U.S.C. § 1407. Lilly explained that these cases have been driven by individual issues, that discovery has already been provided, and that the benefits of centralization can be achieved through informal coordination among counsel on both sides. The judges of the JPML rejected Plaintiff counsel's request to create an MDL, ruling that the factors for transfer pursuant to § 1407 were not satisfied.

Faced with the "logistical nightmare" of litigating on their merits the cases filed to date, including this suit, Plaintiff's counsel seek to re-litigate the JPML's order by seeking a mid-stream transfer of this litigation from the venue of her original choosing to the Southern District of Indiana pursuant to 28 U.S.C. § 1404. (*See* Pl's. Mo., at 1.)  Plaintiff's counsel effectively admit that they do not want to litigate the individual issues that predominate in their lawsuits, preferring to create a forum that would permit the accumulation of suits shielded from individual inquiry and resolution.  The JPML denied this request, and this Court should also reject the effort to create a "de facto MDL."  (Id. at 2.)  Indeed, another court has declined to transfer two related cases at this stage, deferring ruling because it could not conclude on the present record that transfer "will further 'the interests of justice,' or . . . accomplish Plaintiffs' intended objectives."  *Hagan-Brown v. Eli Lilly & Co.*, No. 1:14-cv-1614-AJT-JFA, slip op. at 8 (E.D. Va. Mar. 4, 2015).

There is a reason that courts apply a skeptical eye to procedural maneuvers of the sort proposed here.  Transfer for all purposes under § 1404 is for unique circumstances and not designed to be a pseudo-appellate vehicle for unhappy MDL petitioners.  Plaintiff chose this forum because it is the proper forum with the most connection to this lawsuit.  She cannot now reverse course and meet her heavy burden to transfer the lawsuit away from her first chosen forum — especially in the

middle of discovery and when such transfer is for all purposes and would meaningfully prevent Lilly from obtaining live testimony from the central third-party witnesses in the case and delay merits resolution. If Plaintiff believes centralization is statutorily warranted, she is free to re-petition the JPML, the legislatively-created body designated for deciding these precise questions. But she cannot employ § 1404 to achieve what she could not under § 1407.

## I.   <u>BACKGROUND</u>

### A.   <u>Cymbalta's Longstanding Warning on Discontinuation Symptoms</u>

Cymbalta is a serotonin norepinephrine reuptake inhibitor, or SNRI, approved for the treatment of certain psychiatric and pain disorders. Since Cymbalta's initial approval in 2004, the FDA-approved Physician's Package Insert for the medicine has included a detailed warning on the risk of adverse symptoms upon treatment discontinuation:

> **Discontinuation of Treatment With Cymbalta**
> Discontinuation symptoms have been systematically evaluated in patients taking duloxetine. Following abrupt or tapered discontinuation in placebo-controlled clinical trials, the following symptoms occurred at 1% or greater and at a significantly higher rate in duloxetine-treated patients compared to those discontinuing from placebo: dizziness, nausea, headache, paresthesia, fatigue, vomiting, irritability, insomnia, diarrhea, anxiety, and hyperhidrosis.

During marketing of other SSRIs and SNRIs (serotonin and norepinephrine reuptake inhibitors), there have been spontaneous reports of adverse events occurring upon discontinuation of these drugs, particularly when abrupt, including the following: dysphoric mood, irritability, agitation, dizziness, sensory disturbances (e.g., paresthesias such as electric shock sensations), anxiety, confusion, headache, lethargy, emotional lability, insomnia, hypomania, tinnitus, and seizures. Although these events are generally self-limiting, some have been reported to be severe.

Patients should be monitored for these symptoms when discontinuing treatment with Cymbalta. A gradual reduction in the dose rather than abrupt cessation is recommended whenever possible. If intolerable symptoms occur following a decrease in the dose or upon discontinuation of treatment, then resuming the previously prescribed dose may be considered. Subsequently, the physician may continue decreasing the dose but at a more gradual rate *[see Dosage and Administration (2.4)]*. (September 2011 Cymbalta label, Jones Decl., Exh. 1).

Cymbalta's label echoes the widespread understanding of the potential for these discontinuation symptoms, which are well documented and well understood in clinical and lay literature. *See e.g.*, Am. Psychiatric Ass'n, *Practice Guideline for the Treatment of Patients with Major Depressive Disorder*, 20, 40 (3d ed. 2010) (cautioning that "abrupt discontinuation of SNRIs should be avoided wherever possible" because discontinuation symptoms may occur). In 2005, Lilly published data on the rate of discontinuation events across its initial Cymbalta

4

clinical trials, reflecting in part that 44.3% of Cymbalta patients in six short-term studies experienced one or more discontinuation-emergent adverse events after abrupt discontinuation, as compared to 22.9% on placebo. *See* David G. Perahia et al., *Symptoms Following Abrupt Discontinuation of Duloxetine Treatment in Patients with Major Depressive Disorder*, 89 J. Affective Disorders 207, 208 (2005), Jones Decl., Exh. 2.

One fundamental point is thus beyond dispute: Lilly has explicitly warned about the risk of Cymbalta discontinuation symptoms for over a decade. One federal court has ruled that the Cymbalta discontinuation warning is adequate as a matter of law because it is "accurate, clear, consistent on its face" and "portrays with sufficient intensity the risk involved in taking the drug." *See McDowell v. Eli Lilly & Co.*, --- F. Supp. 3d ---, 2014 WL 5801604, at *15 (S.D.N.Y. Nov. 7, 2014), recons. denied, 2015 WL 845720 (S.D.N.Y. Feb. 26, 2015) (plaintiffs' expert reports did not justify reconsidering adequacy ruling).

### B. The Course of the Cymbalta Litigation to Date

Although Plaintiff now claims the existence of over 4500 unfiled and otherwise unidentified "cases," (Pl's Mo., at 2), a total of 58 have been filed in the past two years. Since the filing of the first suit in October 2012, *Saavedra v. Eli Lilly & Co.*, No. 2:12-cv-9366 (C.D. Cal.), five cases have matured past fact

discovery.[1]   To date, every court to reach a merits determination has dismissed plaintiffs' claims.  *See McDowell*, 2014 WL 5801604, at *15 (granting summary judgment on adequacy grounds and because plaintiff's medical provider understood risk of discontinuation symptoms); *Carnes v. Eli Lilly & Co.*, No. 0:13-591-CMC, 2013 WL 6622915, at *7 (D.S.C. Dec. 16, 2013) (granting summary judgment because plaintiff's medical provider understood risk of discontinuation symptoms).[2]   The *Saavedra* court denied certification to a putative class of plaintiffs raising consumer protection claims premised on factually identical allegations.  *See Saavedra v. Eli Lilly & Co.*, No. 2:12–cv–9366–SVW (MANx), 2014 WL 7338930, at *10-11 (C.D. Cal. Dec. 18, 2014).

In August 2014, Plaintiffs' counsel filed a slew of cases and petitioned the JPML for MDL centralization.  On December 10, 2014, the JPML denied the petition, noting that "most, if not all, of the common discovery has already taken

---

[1] *Carnes v. Eli Lilly & Co.*, No. 0:13-591-CMC (D.S.C.); *Herrera v. Eli Lilly & Co.*, No. 2:13-cv-02702−SVW−MAN (C.D. Cal.); *Hexum v. Eli Lilly & Co.*, 2:13-cv-02701−SVW−MAN (C.D. Cal.); *McDowell v. Eli Lilly & Co.*, No. 13 civ 03786 (RWS, GWG) (S.D.N.Y.); *Seagroves v. Eli Lilly & Co.*, No. CV-13-01183-PHX-DJH (D. Ariz.).  One additional case, *Carter v. Eli Lilly & Co.*, No. CV 13-02700-GHK (FFMx) (C.D. Cal.) was dismissed voluntarily with prejudice shortly following the deposition of the plaintiff, No. CV 13-02700-GHK (FFMx), Dkt. No. 87, and another case, *Lister v. Eli Lilly & Co.*, No. 2:13-cv-03019-SD (E.D. Pa.), was abandoned shortly after it was filed.

[2] Summary judgment motions are pending in the *Herrera* and *Hexum* matters pending in the Central District of California.

place in earlier-filed, related actions." *In re Cymbalta (Duloxetine) Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2014 WL 7006713, at *1-2 (J.P.M.L. Dec. 10, 2014). The Panel also noted that, "Although moving plaintiffs dispute the adequacy of Lilly's production, there is no doubt that the discovery that has occurred to date has been substantial." *Id.* at *1. The prediction of "thousands" of potential cases did not move the Panel, which is justifiably skeptical of such claims. *See, e.g.*, *In re Lipitor Mktg., Sales Practices & Prods. Liab. Litig.*, 959 F. Supp. 2d 1375, 1376 (J.P.M.L. 2013) (Panel "disinclined to take into account the mere possibility of future filings in [its] centralization calculus"). The Panel directed that the parties should "informal[ly] coordinat[e] with respect to the remaining common discovery, as well as other pretrial matters."[3] *In re Cymbalta (Duloxetine) Prods. Liab. Litig.*, 2014 WL 7006713, at *2.

Lilly took prompt steps to proceed as directed by the Panel, proposing a series of measures to "ensure close coordination across cases, avoid duplication of

---

[3] In the face of 120-day service deadlines, and with no decision yet on centralization, plaintiffs proceeded with service of 16 cases in the two days prior to the denial of MDL centralization. Following the denial of centralization, counsel for plaintiffs served an additional 16 cases on Lilly; Lilly served responsive pleadings on a schedule agreed upon by the parties; and the parties proceeded with preliminary discovery, including the exchange of initial disclosures and written discovery. Jones Decl. ¶ 4. Scheduling orders have now issued in 10 cases. Jones Decl. ¶ 4.

effort, and make use of the considerable discovery provided [by Lilly] to date," including,

- making available across the litigation the then-approximately 2.8 million pages of documents produced by Lilly in earlier-filed cases;[4]

- making available across the litigation the transcripts of the depositions of Lilly witnesses taken in the earlier litigation;

- using a single HIPAA-compliant authorization for records collection; and

- proposing to the relevant courts a single stipulated protective order.

Jones Decl., Exh. 3, at 1-2; Jones Decl., Exh. 4, at 2.

Plaintiffs' counsel has not meaningfully responded to any of Lilly's proposals to coordinate discovery across the actual cases on file.  Rather, the principal "coordination" measures proposed by counsel was the tolling of the claims of unspecified "thousands" of "potential plaintiffs" until December 31, 2015.  Jones Decl., Exh. 6, at 1.  This proposal is far removed from the goal of efficient prosecution of the actual pending lawsuits.  It simply eliminated the need for plaintiffs' counsel to pursue cases within the applicable statute of limitations. Lilly respectfully declined the offer.  Jones Decl., Exh. 7, at 1.

Plaintiff's counsel now pivots to another "coordination" strategy: seek § 1404 transfer of this case and others from the districts in which plaintiffs reside

---

[4] To date, Lilly has produced 2,831,929 pages of documents.  Jones Decl. ¶ 5.

— and originally chose to file — to the Southern District of Indiana.[5]   This proposal does not move this case forward on the schedule set by the Court but instead delays any meaningful resolution of this or any of the pending cases.

### C.   Plaintiff Sandra Couch's Suit

Plaintiff's motion gives no attention to her allegations on her Cymbalta treatment.   Those allegations confirm that Plaintiff's claims arise from facts centered in Georgia.

Plaintiff, a Georgia resident, suffered from depression and anxiety.   Compl. ¶ 34.   Her doctor, also a Georgia resident, prescribed Cymbalta around October 2007 for treatment.   Compl. ¶ 34; Jones Decl., Exh. 8, at 2.   Plaintiff stopped taking Cymbalta around February 2010 and, upon discontinuation, allegedly suffered adverse symptoms.   Compl. ¶¶ 35-36.   Recognizing that this district is at the nexus of her claims, Plaintiff filed suit in this Court against Lilly on August 8,

---

[5] To date, Plaintiff's counsel has moved to transfer ten other cases to the Southern District of Indiana.   *See Hagan-Brown v. Eli Lilly & Co.*, No. 1:14-cv-01614-AJT-JFA (E.D. Va.); *Ali v. Eli Lilly & Co.*, No. 1:14-cv-01615-AJT-JFA (E.D. Va.); *Cheshier v. Eli Lilly & Co.*, No. 1:14-cv-01265-GEB-SKO (E.D. Cal.); *Woodruff v. Eli Lilly & Co.*, No. 2:14-cv-01890-GEB-SKO (E.D. Cal.); *Wheeler v. Eli Lilly & Co.*, No. 3:14-cv-01882-AJB-BLM (S.D. Cal.); *Krupp v. Eli Lilly & Co.*, No. 8:14-cv-02792-MSS-TGW (M.D. Fla.); *Valentino v. Eli Lilly & Co.*, No. 6:14-cv-01816-CEM-GJK (M.D. Fla.); *Brotherton v. Eli Lilly & Co.*, No. 8:14-cv-02876-JSM-TGW (M.D. Fla.); *Lacia-Bhoge v. Eli Lilly & Co.*, No. 6:14-cv-01286-CEM-KRS (M.D. Fla.); *Gollin v. Eli Lilly & Co.*, No. 0:14-cv-61810-WPD (S.D. Fla.).   To establish a foothold in Indiana, Plaintiff's counsel have filed (but not yet served) three lawsuits involving a group of seven unrelated and misjoined plaintiffs, none resident in Indiana.   For the same reasons that this case should not be moved to Indiana, Lilly will promptly be moving to sever the unrelated plaintiffs in that lawsuit and to transfer those plaintiffs to their home districts.

2014.  The Complaint asserts multiple common law claims arising under Georgia law, including negligence, design defect, failure to warn, manufacturing defect, negligent misrepresentation, fraud, breach of implied warranty, and violation of Georgia's Fair Business Practices Act.  Compl. ¶¶ 44-123.  This matter is now in active litigation before this Court.

Plaintiff served Lilly with the Complaint and summons on December 8, 2014.  (Dkt. # 3.)  Lilly answered the Complaint on January 16, 2015.  (Dkt. # 8.) Contrary to Plaintiff's assertion, (Pl.'s Mo., at 2), discovery has commenced in this case.  Parties have completed the preliminary 26(f) conference pursuant to Fed. R. Civ. P. 26(f).  (Dkt. # 11.)  Lilly served its initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on January 22, 2015, and Plaintiff served her initial disclosures on February 9, 2015.  Jones Decl., Exhs. 8, 12.  On February 17, 2015, Lilly also served Plaintiff with its First Set of Requests for Production of Documents, pursuant to Fed. R. Civ. P. 34, and First Set of Interrogatories, pursuant to Fed. R. Civ. P. 33.  Jones Decl., Exh. 9.  Lilly also served deposition notices for the healthcare professionals identified in Plaintiffs' initial disclosures on February 17, 2015.  Jones Decl., Exh. 10.  On February 18, 2015, Plaintiff served her First Set of Interrogatories, her First Set of Requests for Production of Documents, and First Set of Requests for Admission.  Jones Decl., Exh. 11.

II.   **<u>ARGUMENT</u>**

Although a district court may transfer a matter to "any other district or division where it might have been brought," 28 U.S.C. § 1404(a), the burden is on the movant to establish that the case should be transferred. *In re Ricoh Corp.*, 870 F. 2d 570, 573 (11th Cir. 1989). In deciding the propriety of transfer, this Court weighs multiple factors, including: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) a forum's familiarity with the governing law; and (7) trial efficiency and the interests of justice. *Spinevision, Inc. v. Burel*, No. 1:06-cv-332-WSD, 2006 WL 3531723, at *3 (N.D. Ga. Dec. 5, 2006). "The burden is on the moving party, and it must demonstrate that the balance of convenience and justice weighs heavily in favor of the transfer." *Bixy v. KBI Holdings, LLC*, No. 1:07-CV-0780-JOF, 2007 WL 3407623, at *5 (N.D. Ga. Oct. 31, 2007).

Plaintiff cannot meet her heavy burden to demonstrate that this case should be transferred. *See In re Ricoh Corp.*, 870 F. 2d at 573; *Acrotube, Inc. v. J.K. Fin. Group, Inc.*, 653 F. Supp. 470, 477 (N.D. Ga. 1987). Here, a predominance of factors militate in favor of maintaining venue in the Northern of Georgia —

including Plaintiff's failure to demonstrate a legally sufficient basis for transferring a suit now proceeding through discovery in Plaintiff's originally chosen venue; the access to and convenience of key third-party witnesses and ability to compel the presence of these key witnesses at trial; and the interest of the state of Georgia in the prompt adjudication of disputes brought by its citizens by experienced Georgia-based jurists.

### A.   Circumstances Do Not "Weigh Heavily" in Favor of Transfer.

A plaintiff who seeks to uproot a case filed in the court of her choosing faces a "heavy burden" in seeking transfer.  *See Acrotube, Inc.*, 653 F. Supp. at 477. Indeed, "[t]he burden should be at least as heavy on a plaintiff who seeks to change the forum originally chosen as it is when the defendant moves to transfer."  15 Charles Alan Wright et al., Federal Practice & Procedure § 3848 (4th ed. 2014). This rule prevents the use of Section 1404 as a vehicle for gamesmanship. "[A]lthough a plaintiff's first choice of venue is strongly favored, subsequent venue choices are not given the same deference because, if they were, a motion to transfer venue could become an unchecked tool for the plaintiff to shop among forums and between judges."  *Bobosky v. Adidas AG*, No. CV 10-630-PK, 2010 WL 4853295, at *6 (D. Or. Oct. 8, 2010) (internal quotation marks omitted);.  For that reason, plaintiffs' transfer motions receive close scrutiny.  To prevail on such a

motion, a plaintiff must offer a "legally-sufficient basis" for revisiting its initial choice of venue. *Orrell v. Motorcarparts of Am., Inc.*, No. CIV 306CV418-C, 2007 WL 895503, at *3 (W.D.N.C. Mar. 22, 2007).

Here, Plaintiff offers no meaningful justification for this abrupt change amid active discovery. Instead, Plaintiff insists that transfer will "reduce costs, eliminate duplication of effort, and streamline" the litigation. (Pl.'s Mo., at 18.) This broadbrush explanation is insufficient.

*First*, amorphous assertions of potential cost savings cannot satisfy the bar for securing transfer. There is nothing remarkable about the proposition that a party could bear the costs of litigating a suit that she has elected to bring. The statute envisions that obligation. *See* 28 U.S.C. § 1920. Given the coordination of plaintiffs' counsel across the pending litigation, there is nothing to prevent counsel from making whatever cost-sharing arrangements they deem appropriate while the cases proceed in their existing venues.[6] In addition, the considerable document

---

[6] Plaintiff's offhand suggestion that Plaintiff "may even be able to share the costs of a multi-plaintiff trial," (Pl.'s Mo., at 16), with other litigants ignores the aversion among courts to such joint proceedings due to their inherent potential prejudice. *See, e.g.*, *Michael v. Wyeth, LLC*, No. CIV.A. 2:04-0435, 2011 WL 1527581, at *3 (S.D.W. Va. Apr. 20, 2011) ("[C]onsolidating [products liability] cases for trial would create a significant risk of jury confusion and prejudice to defendants. The predominance of individual issues also creates a low risk of inconsistent adjudications of common factual and legal issues should these cases proceed separately.").

discovery to date — and Lilly's offer to make that discovery available across the litigation — will result in meaningful cost savings.

**Second**, Plaintiff's claims regarding the convenience of the parties and the courts, including the potential to "streamlin[e]" the proceedings, cannot overcome her weighty burden.   As a threshold matter, the parties have taken steps to coordinate certain matters across the litigation. *See supra* Part I.B-C; Jones Decl., Exhs. 8-14.   Plaintiff offers no explanation for why those continued efforts, if undertaken in earnest, would not be sufficient.   Nor does Plaintiff explain how transfer would relieve any individual plaintiff of his or her obligation to respond to discovery propounded by Lilly.   To be sure, it would not.   *See In re E. Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 195 (E.D.N.Y. 1994) (holding that consolidation of 78 products liability actions would not result in economies of scale because defendants would still be entitled to discovery in each plaintiff's home district).   Moreover, to the extent Plaintiff's arguments relate to easing the burden on the parties' attorneys, (Pl.'s Mo., at 1-2), convenience to counsel "is [almost] irrelevant to whether the motion for transfer should be granted." *Bell v. K Mart Corp.*, 848 F. Supp. 996, 999 (N.D. Ga. 1994) (internal quotation marks omitted).

Finally, Plaintiff cannot justify transfer under § 1404 as a way to relieve burdens to the judiciary as a whole.  While this factor may be considered in contemplating transfer applications, the proper body to entertain the kind of judiciary-wide concerns raised here is the JPML, whose statutory mission is to "promote the just and efficient conduct" of certain related litigation.  With roughly fifty cases pending, it simply makes no sense for the individual courts overseeing these suits to rule on what best serves the interests of the federal judiciary as a whole.  Plaintiff's remedy is not a spate of § 1404 transfer motions, but re-petitioning the JPML if it believes changed circumstances will now meet § 1407's statutory requirements.

Indeed, accommodating this gambit would be unfair.  Plaintiff chose to file this case in the Northern District of Georgia, asserting that venue was proper in this Court.  Compl. ¶ 9.  The parties have proceeded through the preliminary Rule 26(f) conference and 26(a) initial disclosures and exchanged written discovery pursuant to Fed. R. Civ. P. 33 and 34.  Jones Decl., Exhs. 8-12.  Having elected to file here and thus drawn upon the resources of the parties and the Court in prosecuting her suit here, Plaintiff should not now be allowed to rely on purported issues of convenience "that even if true [were] insufficient to influence the Plaintiff's choice of forum in the first instance."  *Orrell*, 2007 WL 895503, at *3.

In sum, there is no legally sufficient basis for transfer under § 1404. Plaintiff's counsel's true aim is to use the transfer statute as a tool for re-litigating the JPML's denial of MDL centralization invoking identical arguments.  Courts have justifiably rejected similar maneuvers.  In *Bristow v. Lycoming Engines*, for example, the court declined a motion to transfer under § 1404 where the parties' motion was based on "the very issues considered and rejected by the MDL panel" and defendants "fail[ed] to explain how, if at all, circumstances have changed" to warrant transfer under 1404(a)).   No. CIV. S-06-1947 LKK/GGH, 2007 WL 1106098, at *3 (E.D. Cal. Apr. 10, 2007).  *See also In re E. Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. at 194 ("A primary goal of plaintiffs in suing in this district was apparently to effect a *de facto* multidistrict litigation).

### B.   The Locus of Operative Facts for The Claims Lies in This District.

"[W]hen the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration."   *Hoffman v. Medquist, Inc*., No. 1:04-cv-3452-WSD, 2005 WL 3095713 at n.1 (N.D. Ga. Nov. 16, 2005); *see also Bell*, 848 F. Supp. at 996 ("[W]here the Plaintiffs' choice of forum lacks any significant connection with the underlying claim, Plaintiffs' choice of forum is entitled to reduced weight"). "Typically the most appropriate venue is where a majority of events giving rise to

the claim arose." *Copley v. Wyeth*, No. 09-722, 2009 WL 2160640, at *4 (E.D. Pa. July 17, 2009) (internal quotation marks omitted).  In cases alleging injury from pharmaceutical products, "the claims typically arise in the plaintiff's home district." *Copley*, 2009 WL 2160640, at *4; *see also Leonard v. Mylan, Inc.*, 718 F. Supp. 2d 741, 744 (S.D.W. Va. 2010); *In re Consol. Parlodel Litig.*, 22 F. Supp. 2d 320, 326 (D.N.J. July 27, 1998).  This precedent rests on the basic premise that the Plaintiff's ingestion of — and alleged injury from — a medicine are at the center of pharmaceutical product liability claims.  Thus, the site of those events is the most rational venue.  *See, e.g.*, *McCraw v. GlaxoSmithKline*, No. CIV.A. 12-2119, 2014 WL 211343, at *5 (E.D. Pa. Jan. 17, 2014) ("Though the development of Paxil is alleged to have occurred within the Eastern District of Pennsylvania, the 'operative facts' (e.g., where ingestion and injury occurred) are those which are alleged to have occurred within the Southern District of Texas."); *In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-MD-1760, 2008 WL 686213, at *3 (M.D. Tenn. Mar. 6, 2008) (describing the above as the "central facts" of a products liability lawsuit).

The core events giving rise to Plaintiff's claims occurred in the Northern District of Georgia.  Plaintiff resides in Georgia, (Compl. ¶ 2), a material factor in determining the appropriate locus of suit and favoring venue in this Court.  *See*

*Prather v. Raymond Const. Co. Inc.*, 570 F. Supp. 278, 284 (N.D. Ga. 1983) (Plaintiff's choice of forum is given great weight "if the one he chose is in the district in which he resides"); *Zeevi v. Am. Home Prods. Corp.*, No. CIV.A. 99-CV-20277, 2002 WL 92902, at *1 (E.D. Pa. Jan. 24, 2002) (deference to plaintiff's choice of forum "reduced" where plaintiff seeks to pursue suit "outside the forum in which the Plaintiff is a resident").   Moreover, the Complaint includes no assertion that any relevant marketing of Cymbalta occurred anywhere other than in Georgia.  *See In re Consol. Parlodel Litig.*, 22 F. Supp. 2d at 326 ("Although Parlodel was designed and manufactured in New Jersey, and NPC made various decisions in New Jersey, Parlodel was marketed and consumed by Plaintiffs in their home districts."); *Boksenbaum v. Abbott Labs.*, No. 09-CV-5425 ENV JMA, 2012 WL 6061360, at *1 (E.D.N.Y. Dec. 6, 2012) (overriding plaintiff's choice of forum in favor of plaintiff's venue of residence because that is where "most of the critical events" occurred, including plaintiffs' prescription of the medication in question and receipt of medical treatment) (internal quotation marks omitted); *Hutson v. A.H. Robins Co.*, 846 F. Supp. 14, 16 (S.D.N.Y. 1994) (overriding plaintiff's choice of forum in favor of plaintiff's venue of residence at the time of her medical treatment, where discovery would be "centered").  Nor is there any claim that Plaintiff either took Cymbalta or experienced any alleged

discontinuation symptoms outside of Georgia.  *See* Compl. ¶¶ 33-37.  Indeed, the

only healthcare professionals identified in Plaintiff's initial disclosures are reported

to have Georgia addresses.  *See* Jones Decl., Exh. 8, at 2-3.

Lilly's residence in the Southern District of Indiana does not change this

analysis.  Courts have repeatedly ruled in products liability failure-to-warn suits

that the home venue of the plaintiff — not that of the defendant pharmaceutical

manufacturer — is the appropriate locus of suit.  *See Locklear v. Mylan Inc.*, No.

1:10CV164, 2011 WL 3296635, at *6 (N.D.W. Va. Aug. 1, 2011) (transferring suit

to venue of plaintiff's residence even though the design, marketing, and testing of

the product at issue occurred in a different venue); *In re Consol. Parlodel Litig.*, 22

F. Supp. 2d at 326 (transferring suit to venue of plaintiff's residence even though

product at issue was designed and manufactured by defendant in different venue);

*Painter's Dist. Council No. 30 Health & Welfare Fund v. Amgen, Inc.*, No. CV 07-

3880 PSG (AGRx), 2007 WL 4144892, at *4 (C.D. Cal. Nov. 13, 2007)

(transferring suit to venue of plaintiff's residence even though decisions regarding

promotion and marketing of product at issue were made by defendant in different

venue); *McLaughlin v. GlaxoSmithKline, L.L.C.*, C.A. No. 12-3272, 2012 WL

4932016, at *3 (E.D. Pa. Oct. 17, 2012) (transferring suit to venue of plaintiff's

residence even though product at issue was designed and manufactured by

defendant in different venue); *Copley*, 2009 WL 2160640, at *4 (transferring suit to venue of plaintiff's residence even though product at issue was designed and manufactured by defendant in different venue); *In re Aredia & Zometa Prods. Liab. Litig.*, 2008 WL 686213, at *3-4 (transferring suit to venue of plaintiff's residence and away from pharmaceutical company's venue of residence); *McCraw*, 2014 WL 211343, at *5 (transferring suit to venue of plaintiff's residence even though product at issue was designed and manufactured by defendant in different venue).  This has been the case even where the plaintiff initially filed suit in the venue housing the manufacturer.  *See, e.g.*, *Locklear*, 2011 WL 3296635, at *2-3; *McLaughlin*, 2012 WL 4932016, at *8.

Moreover, it is not the case, as Plaintiffs suggest, that transfer to the Southern District of Indiana will necessarily enhance the parties' access to all Lilly witnesses with knowledge of the facts relevant to Plaintiffs' claims.  For example, Dr. David Perahia, the co-author of the article at the center of Plaintiffs' allegations, (Compl. ¶ 19), resides in the United Kingdom, not Indianapolis.  *See* Jones Decl., Exh. 13, at ¶ 1.  Similarly, other Lilly witnesses with relevant knowledge of Cymbalta's development, labeling, marketing, and safety are likely to be resident outside of Indiana given the global nature of Lilly's operations.  *See McCraw*, 2014 WL 211343, at *5 (ruling that "convenience of the parties" factor

weighed in favor of transfer out of manufacturer's home venue where defendant had global operations).  Apparent proximity to Lilly's corporate headquarters does not, then, weigh heavily in favor of transfer here.  To the contrary, Plaintiffs selected this venue, actively litigated this suit here, and, despite the plain ties to this jurisdiction, seek transfer solely to create a coordinated proceeding already rejected by the panel of judges with the exclusive statutory charge to adjudicate the propriety of matters for centralization under 28 U.S.C. § 1407.

###     C.    Venue in This Court Ensures Availability of Non-Party Witnesses.

Maintaining venue in this Court preserves the parties' ability to secure live trial testimony from the key third-party fact witnesses, including the medical professionals who prescribed Cymbalta to Plaintiff and provided treatment for any alleged injuries arising from Plaintiff's discontinuation of therapy.  Fed. R. Civ. P. 45(c)(1).  In the products liability setting, for "issues such as specific causation, failure to warn, and damages, testimony from the physicians and other medical providers who prescribed and administered the drugs to Plaintiffs is essential for both parties."  *In re Aredia & Zometa Prods. Liab. Litig.*, 2008 WL 686213, at *2.  This Court has long recognized the preference for live trial testimony that animates the Federal Rules, particularly for witnesses whose testimony has significant bearing on the disposition of the relevant claims.  *See, e.g.*, *Ramsey v. Fox News*

*Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004) ("[L]ive testimony is preferred over other means of presenting evidence."). Transfer of this suit away from the venue of residence for key third-party witnesses undermines this doctrine.

The continued litigation of this suit within the venue of this Court serves the related interest of enhancing convenience for key third-party witnesses, whose deposition and eventual trial testimony will be central to the claims in this case. This Court draws a "distinction between party witnesses and non-party witnesses" and "the convenience of the non-party witnesses weighs most heavily on the Court in deciding on a motion to transfer venue." *Ramsey*, 323 F. Supp. 2d at 1356. This is particularly so for non-party healthcare professionals whose testimony is critical — and in some cases dispositive — of plaintiffs' claims in pharmaceutical products liability suits. *See, e.g.*, *Locklear*, 2011 WL 3296635, at *2 (transferring case to venue of plaintiff's residence where non-party witnesses with material information regarding plaintiff's medical history, treatment, and injuries reside); *Copley*, 2009 WL 2160640, at *5-6 (emphasizing the importance of the convenience of non-party witnesses, particularly treating physicians, in a products liability action). Lilly cannot compel Plaintiff's doctors to appear at trial in Indiana, nor would it likely be able to convince any of them to appear voluntarily given the travel and inconvenience involved. Even were a physician to volunteer,

the imposition of these significant opportunity costs on witnesses who are not parties to this suit is unwarranted given Plaintiff's original election to file in this Court and the connection of this venue to the key events alleged. *See In re Aredia & Zometa Prods. Liab. Litig.*, 2008 WL 686213, at *3; *Locklear*, 2011 WL 3296635, at *3 ("[T]he consideration of the burdens placed on non-party witnesses is paramount. These individuals with no stake in this litigation should not be asked to incur the inconvenience of traveling . . . even if voluntarily.").

Although certain potential witnesses may reside in the Southern District of Indiana, the convenience of non-party medical professional witnesses is more significant to the transfer analysis. *See Ingram v. Family Dollar Stores of Ala., Inc.*, No. CV-06-BE-1507-S, 2006 WL 7132701, at *3 (N.D. Ala. Sept. 29, 2006) ("[T]he convenience of only non-party witnesses may be considered when evaluating the factor of convenience of witnesses."); *Zeevi*, 2002 WL 92902, at *2 & n.3 (transferring to a venue that was more convenient for "Plaintiff's treating physicians, who are essential witnesses to the litigation" even though this would render defendant employee witnesses unavailable). Because the non-party medical professional witnesses reside in Georgia, convenience of the witnesses weighs against transfer.

**D.      This Court Has Greater Familiarity with Georgia Law.**

Plaintiff's transfer proposal would also jeopardize (1) the interest in having Plaintiff's claims resolved by a court familiar with the law of this jurisdiction and (2) Georgia's interest in the adjudication of the claims raised here.

First, Plaintiff brings state common law and statutory claims subject to resolution under Georgia law.  In the Eleventh Circuit, a federal court sitting in diversity over state law claims applies the conflicts laws of the forum state. *Szomjassy v. OHM Corp.*, 132 F. Supp. 2d 1041, 1046 (N.D. Ga. 2001).  The law of Georgia will, therefore, govern Plaintiff's claims.  *See, e.g.*, *Swicegood v. Pliva, Inc.*, 543 F. Supp. 2d 1351, 1354-55 (N.D. Ga. 2008) (Georgia law applied to Georgia resident plaintiff's product liability claims).  As this Court has observed, where Georgia law applies to a plaintiff's claim, a federal court located in Georgia is more familiar with Georgia law.  *See, e.g.*, *Nam v. U.S. Express, Inc.*, No. 1:10-CV-3924-AT, 2011 WL 1598835 at *11 (N.D. Ga. Apr. 27, 2007).  This greater familiarity with existing Georgia law favors maintaining venue here.

Similarly, Georgia's interest in the adjudication and resolution of Plaintiff's claims counsels in favor of maintaining venue in this Court.  *See Prather*, 540 F. Supp. at 284 ("[P]laintiff's choice of forum is outweighed by the public interest in assuring that localized controversies are decided at home") (internal quotation

marks omitted).  As reflected in the allegations of the Complaint, the core events from which Plaintiff's claims arise are grounded in Georgia.

## III.   **<u>CONCLUSION</u>**

For the above reasons, Lilly respectfully requests that the Court deny Plaintiff's motion to transfer.

DATED this 9th day of March, 2015.

By: */s/*  Stephen M. Brooks
Stephen M. Brooks, Esq.
Georgia Bar No. 085151
Lucas A. Westby
Georgia Bar No. 594008
NELSON MULLINS RILEY &
SCARBOROUGH LLP
201 17th Street NW, Suite 1700
Atlanta, GA 30363
Telephone: 404.322.6000
Facsimile: 404.322.1600
stephen.brooks@nelsonmullins.com
lucas.westby@nelsonmullins.com

*Counsel for Eli Lilly and Company*

## CERTIFICATE OF SERVICE

I, Stephen M. Brooks, hereby certify that on the 9th day of March, 2015, I

will electronically file the foregoing with the Clerk of Court using the CM/ECF

system, which will then send a notification of such filing (NEF) to the following:

Steven Samuel Griffin
LAW OFFICES of S. SAMUEL GRIFFIN
P.O. Box 77373
Atlanta, GA 30357

Michael L. Baum
R. Brent Wisner
BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025

*Counsel for Sandra Couch*

/s/ Stephen M. Brooks
Stephen M. Brooks, Esq.